THE STATE OF MISSOURI AT THE RELATION OF A. B. BLUE, RELATOR, v. E. E. WALDO, CITY PHYSICIAN AND HEALTH OFFICER OF THE CITY OF HANNIBAL, MISSOURI, RESPONDENT.*—5 S. W. (2d) 653.

St. Louis Court of Appeals. Opinion filed May 1, 1928.

*Corpus Juris-Cyc. References: Health, 29CJ, p. 245, n. 30; Mandamus, 38CJ, p. 692, n. 10; *Quo Warranto*, 32Cyc, p. 1420, n. 54.

*Plowman & Schofield, E. W. Nelson* and *Lewis O'Connor* for relator.

*Harrison White* for respondent and The City of Hannibal.

*Ben Ely, Jr.,* Prosecuting Attorney, for the Marion County Health Unit.

SUTTON, C.—This is a proceeding by mandamus originally instituted in this court. Upon the filing of relator's petition, the alternative writ of this court issued. Respondent's return thereto was duly filed. To the return relator filed a demurrer. The cause has been

submitted here on the conceded facts as shown by the alternative writ, the return, and the exhibits filed.

Relator owns and operates a large dairy farm in Marion county, outside the limits of the city of Hannibal, and has hitherto sold large quantities of milk and milk products, produced on said farm, to customers in said city, and by this proceeding he seeks to compel respondent to inspect, test, and grade the milk and milk products, produced on his said farm and offered for sale or distribution in said city, and to issue to him such permit for the sale and distribution of his said milk and milk products as such inspection, testing, and grading will warrant. Respondent is city physician of said city of Hannibal, and relator claims that respondent is also *ex officio* health officer of said city, and that, as such health officer, it is his duty to inspect, test, and grade the milk and milk products produced on said dairy farm and offered for sale or distribution in said city, and to issue to relator such permit for the sale and distribution of his said milk and milk products as such inspection, testing, and grading will warrant. Respondent admits that he is city physician of said city of Hannibal, but denies that he is *ex officio* health officer of said city, and says that Dr. E. M. Lucke is the health officer, whose duty it is to inspect, test, and grade milk and milk products offered for sale or distribution in said city, and to issue permits for the sale and distribution of milk and milk products in said city. It is conceded on all sides that the duty of inspecting, testing, and grading, and the issuing of permits, is devolved on the health officer of the city, so that the real question involved in controversy here is: Who is the health officer, Dr. E. M. Lucke or respondent?

It is not disputed that Dr. Lucke has for two years performed all the functions of health officer of the city under elections by the city council, and that during that time the respondent has performed the functions of city physician only. Relator contends that the office of health officer does not exist as a *de jure* office independent of the office of city physician, and that, therefore, Dr. Lucke is not and cannot be health officer either *de jure* or *de facto*. Respondent contends that the office of health officer exists independent of the office of city physician, and that Dr. Lucke is health officer of the city *de facto et de jure*. He also contends that if Dr. Lucke is not health officer *de jure,* he is at least health officer *de facto,* so that in any event title to office is involved, which may not be determined in a proceeding by mandamus. In view of these contentions, we will consider the pertinent ordinances of the city, along with the facts as disclosed by the alternative writ, the return thereto, and the exhibits filed.

Section 1 of article 1 of ordinance No. 1, entitled, "An Ordinance Relating to Officers," enacted in 1924, provides as follows:

"Every person elected or appointed to any office under the city government, shall be a citizen of the United States, over the age of

twenty-one years, and shall have resided in the city at least two years next preceding his election or appointment.''

Section 7 of said article provides for the election by the city council of officers of the city annually as follows:

''Clerk, who shall also be Auditor and Purchasing Agent; Collector; Street Commissioner; Engineer who shall also be Sewer Commissioner; Physician; Assessor; Chief of Fire Department who shall also be Building Inspector; Humane Officer who shall also be Overseer of the Poor; and Inspector of Weights and Measures who shall also be Sanitary Policeman and Market Master.''

Article 1 of ordinance No. 28, entitled ''An Ordinance Concerning the Health Department and Board of Health,'' enacted in January, 1925, provides as follows:

. . . . . .

''Sec. 2. The board of health of the city of Hannibal shall consist of the city physician, city clerk, and three members of the city council, who shall be appointed annually by the mayor, and confirmed by the city council at the first meeting in June in each year, or as soon thereafter as may be, and any vacancies in said board may be filled at any regular meeting of the city council.

''Sec. 3. The city physician shall be president of said board of health, and health officer and the city clerk shall be the secretary thereof; the marshal shall attend all their meetings, serve all notices required by them, and make due returns thereof, and shall report to them all matters pertaining to the public health, which in his opinion, require their attention. . . .

''Sec. 5. The board of health shall have supervision of the general sanitary condition of the city, shall have the power, either personally or by officers delegated by them, to examine and inspect all cellars, sewers, privies, gutters, alleys, pools or stagnant water, and all other places which are, or are likely to become prejudicial to the public health, and shall have the power to give orders, to the person owning or in possession of the premises on which said conditions may exist, to abate the same within a specified time, or take such action in relation thereto, as, in their opinion public health may require.''

Article 2 of said ordinance No. 28 provides as follows:

''Section 1. It shall be the duty of the city physician, who shall be a licensed and practicing physician, to report to the board of health all nuisances or other causes which in his opinion are likely to be detrimental to the general health of the city, and upon being informed of the existence or introduction of any contagious or infectious disease within the city, to inquire immediately into the facts and proceed at once to take such action in relation thereto as may be required, and to report the same to the board of health.

''Sec. 2. The city physician shall be the health officer of the city. and shall attend the meetings of the board of health and act as a

member thereof, and report to that body all matters which he may deem important and give such information as the said board may desire in relation to the sanitary condition of the city, and see that all orders of the said board are enforced and obeyed.

"Sec. 3. The city physician shall attend and minister to such indigent persons as he may be directed by the mayor, board of health, or humane officer and overseer of the poor, and to visit and administer to prisoners sick in the city workhouse, or calaboose, and shall perform all other duties required of him by law or by the mayor or board of health, or council, without extra compensation; he shall at all times keep on hand a sufficient supply of vaccine matter, and see that all persons, so far as he may have it in the power, are properly vaccinated.

"Sec. 4. The health officer shall have general control of the health department, and all officers and employees connected therewith, under the supervision of the board of health; he shall have general supervision of all matters pertaining to public health in the city of Hannibal, enforce all ordinances, rules and regulations pertaining thereto, and shall be held responsible for the conduct and faithful discharge of the duties of all employees in the health department. The health officer as executive of the health department, shall personally see that all infected houses are properly fumigated, and shall at all times be under the supervision and direction of the board of health, in the performance of his official duties.

"Sec. 5. It shall be his duty to make either chemical or bacteriological examination of all specimens of food, water, sputum, urine, blood or other specimens as may be directed by the board of health.

"Sec. 6. He shall keep a correct record of all particles submitted to him for analysis or examination and report the result of conditions found to the board of health in writing. In event of prosecutions in court, he shall present and testify as to results found in any given case."

Section 4 of article 3 of said ordinance No. 28, provides as follows:

"No person having any of the diseases mentioned in section 1 of this article or any other infectious disease and any one attending on the same, except the physician, shall knowingly, wilfully or carelessly expose others before he or she or they procure a certificate from the city physician that the term of infection has passed; nor shall any person put out or remove from the premises occupied or owned by him, an infected person, before the term of infection has passed. No person who is under quarantine, by order of the city physician or board of health, shall leave such place of quarantine or isolation until released therefrom by the city physician."

Section 2 of article 8 of said ordinance No. 28 provides that the sanitary policeman shall be vested with power to make arrests for the violation of any ordinance of the city, and that it shall be his

duty to see to the enforcement of all ordinances of the city relative to health and sanitary conditions, and to execute the orders of the city physician and board of health.

Prior to January 1, 1926, the board of health of the State of Missouri suggested to the county court of Marion county and to the city council of the city of Hannibal that in furtherance of the public health said county and city should form a joint health unit, which should supersede the health organization of the respective county and city, and which should perform all the functions theretofore performed by them separately. Pursuant to such suggestion the county court and city council entered into an agreement for the formation of such unit, it being a part of such plan that said county court and said council should, by concurrent action, select the officers of such unit, and, among others, the director of such unit, who should be at the same time both the health officer of said city and the deputy health commissioner of the State of Missouri for Marion county, and that the salary of said commissioner together with the salaries of the other officers of such unit should be paid by said county and city jointly. In pursuance of said plan said county court on the 23rd day of November, at its November term, 1925, made and entered of record the following order:

"In the matter of a county health department for Marion county, the state board of health of Missouri, having proposed to contribute $4000 per annum towards the support of public health work in Marion county, Missouri, if the city of Hannibal and the county court appropriate $7000 per annum for a similar purpose; and the city council of Hannibal having accepted the plan and appropriated $4000; it is ordered by the court that the plan of health work submitted by the State board of health be accepted, and, that the sum of $3000 be appropriated, payable in twelve equal monthly installments to pay the salary and expenses of a full time deputy State commissioner of health for Marion county, Missouri, and that an office be provided for his use in the courthouse.

"The county court, the Hannibal city council and the State board of health will mutually agree upon the appointment and compensation of the health commissioner, and upon the allotment of funds from each source towards the payment of the several items in the budget. It is moved by Judge RIEDEL and seconded by Judge MASTERSON, and passed unanimously."

In further pursuance of said plan, said county court, on January 8, 1926, at and during its said November term, 1925, made and entered of record the following order:

"In the matter of county health department, a delegation composed of Mayor Anderson of Hannibal and committee from city council, representatives of the Hannibal board of education and Red Cross, also Dr. Mountain, representing the State board of health, appeared be-

fore the court and a conference was held in the interest of the health unit proposition. A number of applications for the position of county health officer was presented and after due consideration, Dr. E. M. Lucke was appointed, subject to the approval of the city of Hannibal, for a term of one year, beginning February 1, 1926.''

On January 18, 1926, the city council of the city of Hannibal passed ordinance No. 1402, entitled ''An Ordinance Providing for the city of Hannibal Becoming a Part of the Marion County Health Unit and Providing for the Appropriation of Money Therefor,'' which was duly approved by the mayor, as follows:

''Sec. 1. That the health department of said city of Hannibal shall be associated with the Marion county health unit when the same is organized and the city council in conjunction with the county court of Marion county, shall select the officers of said health unit.

''Sec. 2. The sanitary policeman of the city of Hannibal shall work with and enforce the ordinances of said Marion county health unit.

''Sec. 3. The city of Hannibal shall pay the salary of said sanitary policeman and in addition to the payment thereof shall pay the sum of $2500, or so much thereof as may be necessary as the part of the city of Hannibal in the expenses of said Marion county health unit, provided, however, that no expenses paid by the city of Hannibal in addition to the salary of sanitary policeman shall in any event exceed the sum of $2500 for any fiscal year.''

On the same day, at a meeting of the city council of said city of Hannibal, proceedings were had and entered in the minutes of the meeting, as follows:

''Alderman Ellis, of the joint committee, appointed in reference to the Marion county health unit, made a verbal report stating that the committee had met in joint session with the Marion county court and had considered a number of applicants for the position of health officer; further said, after due consideration, the appointment of Dr. E. M. Lucke was approved by the county court as county health officer, providing the same met with the approval of the city council of Hannibal and that the committee recommends the appointment of Dr. E. M. Lucke as health officer of the city of Hannibal in connection with the Marion county health unit.

''On motion of Alderman Poole the report of the committee was adopted with the understanding that the committee prepare in writing all of the above facts and that the report be then filed for record (such report is on file in the city clerk's office of said city).

''On motion of Alderman Caldwell, the council proceeded with the election of officers.

''Alderman Caldwell nominated Dr. E. M. Lucke as health officer of the city of Hannibal in connection with the Marion county health unit.

"There being no other nominations the roll call on the above nomination resulted as follows:

"In favor of Dr. E. M. Lucke,—Eleven (11). Absent—One (1).

"And the mayor declared Dr. E. M. Lucke elected health officer."

On the same day the city council, by ordinance duly passed and approved, reduced the salary of the city physician from $1200 per annum to a nominal amount.

On February 1, 1926, the city council, by ordinance No. 1404, duly passed and approved, amended section 1 of article 1 of ordinance No. 1 by adding thereto the following:

"Provided that the requirements of two years' residence shall not apply to any city health officer or appointee or employee of the city board of health."

On the same day, the city council, by ordinance No. 1405, duly passed and approved, amended sections 2 and 3 of article 1 of ordinance No. 28, to read as follows:

"Sec. 2. The board of health of the city of Hannibal shall consist of the city clerk, and three members of the city council who shall be appointed annually by the mayor and confirmed by the city council at the first meeting in June of each year, or as soon thereafter as may be and any vacancy in said board may be filled at any regular meeting of the council.

"Sec. 3. The president of said board shall be one of the members of the city council appointed by the mayor, and the city clerk shall be secretary thereof; the marshal shall attend all their meetings, serve all notices, required by them, and make due returns thereof, and shall report to them all matters pertaining to the public health, which in his opinion, require their attention."

On February 8, 1926, the city council, by ordinance No. 1417, duly passed and approved, amended section 5 of article 1 of ordinance No. 28, so as to require the board of health to exercise its powers and functions prescribed in said section, "in connection with the Marion county health unit," and by the same ordinance also amended section 2 of article 8 of said ordinance No. 28, so as to require that the sanitary policeman "shall also work with and enforce the orders of the officers in charge of the Marion county health unit."

On July 6, 1926, the city council, by ordinance No. 1458, duly passed and approved, amended section 4 of article 3 of said ordinance No. 28, by inserting after the words, "city physician," wherever those words occur in the section, the words, "or health officer."

An ordinance entitled, "An Ordinance Concerning the Inspection of Milk," passed by the city council on May 24, 1926, and duly approved by the mayor on May 25, 1926, provides for the inspection, testing, and grading of milk and milk products offered for sale or distribution within said city, and defines in detail the different grades; provides that the inspection, testing, and grading shall be done by the

health officer of the city; provides that it shall be unlawful for any person, firm, or corporation to bring into or receive into said city, or to sell or offer for sale therein, or to have on hand, any milk or milk products, who does not possess an unrevoked permit from the health officer of said city; and provides that any such permit may be revoked by the health officer upon the violation by the holder of any of the terms of said ordinance or any other health ordinance of the city, with the right of appeal by the holder of such permit to the board of health.

On January 4, 1927, the city council re-elected Dr. E. M. Lucke as health officer of said city on the same terms and under the same conditions as his election for the previous year.

On January 10, 1927, the county court of Marion county, at and during its November term, 1926, made and entered of record the following order:

"Dr. E. M. Lucke, health officer for the Hannibal-Marion county health unit, appeared before the court in regard to an appropriation for said health unit for the coming year, advising the court that the city of Hannibal had endorsed the unit for another year with the approval of the Marion county court and asked that the court appropriate an amount for the continuance of the unit. After due consideration of the matter, the court ordered that an amount of $2500 be appropriated for said health unit for the year beginning February 1, 1927."

Pursuant to his election as health officer of said city, Dr. E. M. Lucke entered upon the duties of said office, and has since at all times exercised the powers and performed the functions and duties of said office, his salary being paid by said county court and said city jointly. He has at all times during his incumbency been recognized by said city, by its citizens, by its board of health, administrative officers and council, by the dairymen selling or distributing milk or milk products in said city, and by the members of the medical profession, as health officer of said city. After the passage of said milk ordinance, relator applied to Dr. Lucke as health officer for, and received and accepted from him, a permit to sell milk and milk products in said city, and continuously for many months sold milk and milk products in said city under such permit, and never at any time applied to respondent for a permit until after said Lucke as such health officer had reduced the grade of relator's milk and milk products as hereafter stated. In the summer of 1927, at relator's request, Dr. Lucke, as health officer of said city, tested and graded relator's milk and milk products, and gave to said milk and milk products a grade of A, and relator, in compliance with said grading, so labeled and sold his milk and milk products. Afterwards, said Lucke, as health officer, again tested and graded relator's milk and milk products, as required by said milk ordinance, and after proper testing determined that said milk; in view of the bacterial count and the sanitary conditions in and about

the premises of relator, was not in accordance with grade A as defined in the ordinance, and accordingly reduced the grade of said milk to grade B, and so notified relator. Relator, however, disregarded such grading, and continued to sell his milk in said city under the grade of A. On November 2, 1927, said Lucke, as deputy State commissioner of health and health officer of the city of Hannibal, revoked the permit of relator to sell milk in said city, and duly notified relator thereof. Notwithstanding such revocation, relator continued not only to sell his milk, but to sell it under the grade of A, in said city in violation of said milk ordinance. A prosecution was instituted against him before the recorder of said city for this offense. This prosecution was pending and undetermined at the time of the issuance of the alternative writ herein. Notwithstanding the revocation of his permit and the prosecution instituted against him, the relator continues to sell his milk in said city under the grade of A, in violation of the ordinance.

On November 15, 1927, relator served upon the respondent a written request, as follows:

"I am engaged in selling milk in Hannibal, Missouri, and want to comply with the law both of the city and the State, and being reliably informed that as city physician and health officer, you are the proper person to determine various grades of milk and to issue permits for selling milk in the city of Hannibal, therefore, I am requesting a permit from you to sell milk in Hannibal, and request that a grade be given me as soon as possible and oblige."

To which request the respondent made reply as follows:

"Referring to your letter of November 15, 1927, stating that you are engaged in selling milk in Hannibal and requesting me to give you a permit to sell milk in the city, I beg to advise you that, not being health officer of the city of Hannibal, I have no authority to issue such permits.

"In January, 1926, the city of Hannibal, by ordinance of the city council, elected to become a part of and to act in conjunction with the Marion county health unit, and as such to select the officers of said unit. Later the ordinances designating the city physician as health officer were repealed and thereupon the council selected Dr. E. M. Lucke as health officer, who since that date has functioned as such. I have not acted as health officer in any way.

"There are some fifty-one dairymen operating in Hannibal and all of them including yourself have been operating under permits from Dr. Lucke as health officer and have submitted to his regulation. (Your own case being the only exception, as I understand your permit having been recently revoked by the board of health.) For me, at this time, to act as health officer would be to disorganize all that has been done and would be assuming an unwarranted and unlawful authority on my part.

"Your request for a permit is therefore respectfully refused and you are directed to make proper application to Dr. Lucke, who, I am sure, will be glad to give your application every reasonable consideration."

Thereupon relator petitioned this court for a writ of mandamus, and the alternative writ issued, as above stated.

It seems clear that the city council by ordinance No. 1402 and the various amendatory ordinances as above set out, viewed in the light of the facts and circumstances surrounding their enactment, and giving due weight to the construction placed upon the ordinances by the city council itself, the board of health of said city, the administrative officers, and all the parties concerned with the ordinances, intended to segregate the office of city physician from that of health officer, and to devolve the duties of health officer upon some person other than the city physician, to be selected by the city council in conjunction with the county court of Marion county to the end that the deputy State commissioner of health for Marion county and the health officer of the city should be the same person, whose salary should be paid jointly by the county and city. The only provision of the ordinances, as they now stand, inconsistent with this intention is the provision contained in section 2 of article 2 of ordinance No. 28, to the effect that the city physician shall be the health officer of the city and act as a member of the board of health. Section 3 of said article defines the duties of the city physician as such. Sections 4, 5, and 6 of said article define the duties of the health officer as such, and are in no way inconsistent with the intention to segregate the offices of city physician and health officer, and to devolve the functions of health officer upon a person different from the city physician. While said section 2 of article 2 is not expressly repealed by said ordinance No. 1402 and the amendatory ordinances as above set out, it is repealed, we think, by necessary implication, in so far as it provides that the city physician shall be health officer of the city and act as a member of the board of health.

It will be observed that contemporaneously with the enactment of section 1402, the council passed an ordinance reducing the salary of city physician from $1200 per annum to a mere nominal sum. Within a few weeks afterwards the council passed amendatory ordinances Nos. 1404, 1405, 1417, and 1458.

Ordinance No. 1404 amends section 1 of article 1 of ordinance No. 1, so that the requirement of said section of two years' residence in said city as a qualification for every person elected or appointed to any office under the city government, including the city physician, shall not apply to the city health officer or any appointee of the city board of health. This amendment is utterly inconsistent with an intention that the city physician and the city health officer should be one and the same person,

Ordinance No. 1405 amends sections 2 and 3 of article 1 of ordinance No. 28, so as to eliminate the city physician as a member of the city board of health, as president thereof, and as health officer of the city. Said sections 2 and 3 as originally enacted, provide not only that the city physician shall be a member of the board of health and the president thereof, but also provides that he shall be health officer of the city, whereas the sections as amended reorganize the board of health and exclude the city physician, not only as a member and as president of the board, but as health officer of the city as well. It is inconceivable, in view of this amendment, that the council intended that the city physician should continue to be health officer of the city and to act as a member of the board of health, as provided in section 2 of article 2 of the ordinance.

The remaining amendatory ordinances Nos. 1417 and 1458, requiring the board of health of the city to act in connection with the Marion county health unit, and requiring the sanitary policeman to work with and enforce the orders of the officers in charge of said health unit, and recognizing the health officer as acting in the performance of his duties, independent of the city physician, also show an intention to accomplish the severance of the two offices, in conformity to the plan of co-operation of the city council with the county court in the selection of the health officer, in the payment of his salary, and in the enforcement of the ordinances and regulations for the promotion and protection of the health of the city.

Relator urges that it is beyond the power of the city council to surrender or delegate to the county court the power given the council under its charter to elect the officers of the city, or to permit the county court to participate in the election of such officers. This is beside the question here. The city council in the free exercise of its prerogative elected Dr. Lucke as health officer of the city. Surely his election is not to be held invalid or illegal because the county court approved his election, or had appointed him, or was willing to appoint him, as deputy state health commissioner for the county. Though the council may not bind itself by ordinance to elect as health officer a person acceptable to the county court, this does not mean that the council may not elect a person acceptable to the county court if the council, in the exercise of its prerogative, sees fit to do so.

We conclude that Dr. E. M. Lucke is the health officer of the city of Hannibal *de facto et de jure*.

But, if this were not so, Dr. Lucke is nevertheless at least the *de facto* officer of a *de jure* office. If, under the ordinances, as they now stand, it may be said that the city physician is *ex officio* health officer, and that it is his duty as city physician to exercise the functions of health officer, the office is nevertheless a distinct *de jure* office, the duties and functions of which are well defined by the ordinances, and Dr. Lucke is and has been for a long time in the actual possession of

such office, under election by the city council, actually performing its duties and functions, with the assent of the city physician, who has at all times recognized him as health officer, and has restricted his own work to the duties and functions of city physician as defined by the ordinances. It is clear that in any event the title to the office is involved, which may not be determined in a proceeding by mandamus, such as this, but can only be determined by a proceeding in *quo warranto*. With the *de jure* office full *de facto*, the respondent, who has elected to consider himself out, may not be injected into the office by mandamus. Though the respondent be by virtue of his office as city physician the proper person to fill the office of health officer and to exercise its functions, he has nevertheless voluntarily yielded the office to Dr. Lucke, who is in complete possession, exercising all its duties and functions. In this situation the issuance of a peremptory writ compelling respondent to function as health officer by inspecting and grading relator's milk or milk products and passing upon his right to a permit to sell milk or milk products in said city, without a previous ouster of the *de facto* incumbent by *quo warranto*, would introduce interminable confusion.

The Commissioner recommends that the alternative writ issued herein be quashed and that a peremptory writ be denied.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The alternative writ issued herein is accordingly quashed and a peremptory writ is denied. *Daues, P. J.,* and *Becker* and *Nipper, JJ.*, concur.